USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

CARLOS PEGUERO,
                   Defendant.

6-cr-1155 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Defendant Carlos Peguero ("Defendant") is accused of twenty-two violations of supervised release. On July 16, 2020, Defendant admitted to seven violations. An evidentiary hearing on the remaining fifteen violations is scheduled for October 8, 2020.[1] The Government moves, *in limine*, to admit seven out-of-court statements by an alleged victim of domestic violence who is expected to be unavailable to testify at the hearing.

## BACKGROUND

### I. Defendant's Criminal History

    On May 7, 2007, Defendant pled guilty to one count of Conspiracy to Commit Armed Bank Robbery, in violation of 18 U.S.C. 371, and one count of Armed Bank Robbery, in violation of 18 U.S.C. 2113. On September 13, 2007, Defendant was sentenced to a total of 100 months' imprisonment, to be followed by 60 months' supervised release. *See* ECF No. 37. Defendant's supervision began on December 27, 2013. On April 1, 2015, Defendant pled guilty to two violations of supervised release (Criminal Contempt-2 and Use of a Controlled Substance) and was sentenced to eight months' imprisonment, followed by twenty-four months' supervised release. *See* ECF No. 47. On June 7, 2018, Defendant pled guilty to one violation of supervised

---

[1] The evidentiary hearing was originally scheduled for September 23, 2020 and was later rescheduled to October 8, 2020.

release (Endangering the Welfare of a Child) and was sentenced to twenty-four months' supervised release. *See* ECF No. 55. On July 18, 2019, Defendant was arraigned on seven new violations of supervised release. The Government later amended the violation report on October 24, 2019, November 26, 2019, and June 2, 2020, and Defendant was ultimately arraigned on a total of twenty-two violations of supervised release. On July 16, 2020, Defendant admitted to seven of the twenty-two violations (#1-3 and #11-14). An evidentiary hearing is scheduled for October 8, 2020 to address the remaining violations.

## II.     Relevant Violations

Violations #4-5 arise out of an alleged incident of domestic violence perpetrated by the Defendant in Fishkill (the "Fishkill Incident"). *See* ECF No. 73 at 2. Violation specifications #7-10 arise from a separate alleged incident of domestic violence perpetrated by the Defendant in Yonkers (the "Yonkers Incident"). The alleged victim in both incidents is the same individual (the "Victim"). On October 1, 2020, the Government filed a motion *in limine* to admit certain out-of-court statements made by the Victim in anticipation that the Victim will not appear at the hearing.

## III.    Victim's Unavailability

According to the Government, the Victim has expressed fear of the Defendant in many of her statements to law enforcement. ECF No. 73 at 3. On September 10, 2020, an FBI Task Officer attempted to contact the victim and serve a subpoena on her to testify at her last known address. The FBI Task Force Officer was met by one of the Victim's children who indicated the Victim was in the hospital. *Id*. On September 16, 2020, a Fishkill Police Officer attempted to visit the Victim, but the Victim was again not present. *Id*. Law enforcement was able to contact the Victim over the phone later that day and the Victim refused to appear. *Id*. at 3-4. On

September 17, 2020, a Fishkill Police Officer again contacted the Victim. *Id.* at 4. The Victim indicated that she did not want to testify because she had suffered seizures and anxiety from both incidents and was afraid of having to relive them and retrigger her medical issues. *Id.*

The Defense disputes the Victim is fearful of the Defendant, stating it is "mere conjecture and speculation" and claims the Victim advised Fishkill Detective Carl Demarco that she is not fearful of the Defendant. *See* ECF No. 75 at 6. The Defense points to the fact that the Victim identified health concerns, and not fear of the Defendant, as her reason to not testify. *Id.* Further, it points to a notarized letter the Victim sent to the Dutchess County District Attorney's Office on November 13, 2019, indicating she is moving out of state and wants the criminal cases against Defendant dismissed. *Id.*

### IV. Defendant's Interest in Confronting the Victim

Defendant's Counsel indicates he would like to question the Victim regarding her mistrust, anger, and bias towards the Defendant and whether it would cause her to exaggerate or fabricate allegations. He would also like to question the Victim regarding why she didn't mention Defendant's use of a glass bottle in her initial Fishkill statement, whether she possessed and brandished a weapon during the Fishkill Incident, and about the circumstances of her order of protection and why she traveled to the Defendant's mother's residence.

### STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial,

without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

The Confrontation Clause of the Sixth Amendment places narrow restrictions on the admissibility of out-of-court testimonial statements. *See Crawford v. Washington*, 541 U.S. 36 (2004). However, the Confrontation Clause does not apply to revocation proceedings. *US v. Aspinall*, 289 F.3d 332, 342-43 (2d. Cir. 2004). Instead, the right to question an adverse witness is governed by Federal Rule of Criminal Procedure 32.1(b)(2). Under FRCP 32.1(b)(2), a judge must give the defendant "an opportunity … to question any adverse witness," unless the judge determines "that the interest of justice does not require the witness to appear." FRCP 32.1(b)(2)(C). To make this determination, the court must determine whether good cause exists to deny the defendant the opportunity to confront the adverse witness. The court must balance, one the one hand, the defendant's interest in confronting the declarant, against the government's reasons for not producing the witness and the reliability of the proffered hearsay. See *U.S. v. Williams*, 443 F.3d 35, 46-47 (2d. Cir. 2006) (no abuse of trial court's discretion in finding "good cause" where the declarant had previously been shot by the defendant and had a well-founded fear of retribution); *United States v. Carthen*, 681 F.3d 94, 101 (2d Cir. 2012) (affirming finding of "good cause" to admit statements made by domestic violence victim under oath because "good cause" exists when a defendant has a "history of violent conduct [that] ma[kes] reprisal against [the declarant] a possibility) (quoting *United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002).

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). While hearsay is generally inadmissible, the Federal Rules of Evidence provide certain exceptions for which it may be admissible. See Fed. R. Evid. 803. Statements that are admissible under an established exception to the hearsay rule may be admitted in supervised-release revocation proceedings and do not require a "good-cause" analysis. *U.S. v. Williams*, 443 F.3d 35, 45 (2d. Cir. 2006).

Under the "excited utterance" exception to the hearsay rule, "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" may be admissible for the truth of the matter asserted. Fed. R. Evid. 803(2). The reliability of excited utterances, and therefore the reason for their admissibility, is premised upon the notion that "the declarant, in a state of excitement, is unlikely to muster the reflection necessary for fabrication." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004). Excited utterances "must rest on personal knowledge" to be admissible (id.); however, they "need not be contemporaneous with the startling event. . . ." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998). *See United States v. Delvi*, 275 F.Supp.2d 412, 415 (statement made 40 minutes after a shooting was an excited utterance because declarant was still bleeding, was being treated in the emergency room, and was observed to have an excited state); *United States v. Fell*, 531 F.3d 197, 231 (2d Cir. 2008) (statements made by mother at scene while police were responding were properly admissible as excited utterances); *United States v. Vazquez*, 818 Fed. Appx. 93, 95-96 (2d Cir. 2020) (9-1-1 call made while hostage victim was crying and upset qualified as "excited utterance" even though defendant was in the shower at the time of the call); *United States v. Steele*, 216 F. Supp.3d 317, 322-323 (S.D.N.Y. 2016) (9-1-1 call reporting a gunshot several

5

minutes after it happened was an "excited utterance" even though the caller may have remained composed during the call).

Under the "present sense impression" exception to the hearsay rule, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" may be admissible for the truth of the matter asserted. Fed. R. Evid. 803(1). Statements that qualify as present sense impressions under Rule 803(1) "are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *U.S. v Graham*, 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) (citing *U.S. v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). Unlike "excited utterances", "present sense impressions" must be contemporaneous with the event described. *Id*.

## DISCUSSION

The Government seeks to admit seven out-of-court statements: (1) The Fishkill 9-1-1 Call, (2) The Fishkill DIR, (3) Statement-1, (4) Statement-2, (5) The Yonkers 9-1-1 Call, (6) Statement-3, and (7) The Yonkers DIR. The Government argues that all statements, except Statement-2, are admissible as "excited utterances." It further argues that there is "good cause" to admit all statements. The Defense failed to address the Government's "excited utterance" argument altogether. It disputes the Government's argument that there is "good cause."

    1.    <u>The Fishkill 9-1-1 Call</u>

The Government seeks to admit a 9-1-1 call made by the Victim roughly twenty minutes after the Fishkill Incident. In the call, the Victim is shaken and describes the incident and her injuries. After reviewing the call, the Court believes the call qualifies as an "excited utterance." The Victim was emotional and excited. While the call did not occur during the incident, "excited utterances" do not need to be contemporaneous with the event described. Further, the call was only twenty minutes after the incident, so the Victim had little time to fabricate her statement.

Portions of the call where the Victim discusses her injuries are also admissible as "present sense impressions."

There is also "good cause" to admit the phone call. The Defense has an interest in confronting the Victim regarding her "mistrust, anger, and bias" and possible omissions. However, the excited state of the Victim and the temporal proximity of the call to the incident indicate that the statements are highly reliable. Further, the Government's reasons for failing to produce the witness—her fear of suffering medical consequences and her history of abuse at the hands of the Defendant which makes reprisal a possibility[2]—weigh in favor of a finding of "good cause."

For these reasons, the call is admissible, provided the Government lays the proper foundation.

    2.    The Fishkill DIR

The Government seeks to admit the Domestic Incident Report (DIR) from the Fishkill Incident, which contains the Victim's first words to responding officers at the scene: "He hit me in my head." It also contains a statement the Defendant gave at the hospital later that day: "I found pics on Carlos cell and confronted him about the what I found. He got very angry and began yelling and begins hitting me in my stomach. He threatened to break my phone. I continued to punch me in my head and I realized I was bleeding in my head."

---

[2] The Defense's argument that the Government does not have a good reason for its failure to produce the Victim is unpersuasive. First, the Victim refused to testify because she is afraid testifying will cause her to suffer serious medical consequences. Second, the Victim has expressed fear of the Defendant in the past. Even if she no longer fears the Defendant, the Second Circuit has found that a "history of violent conduct [that makes] reprisal [against the declarant] a *possibility*" may be a "good reason." See *United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002) (emphasis added). In this case, reviewing the admissible statements and the Defendant's history of domestic abuse, it is clear that reprisal is possible and the Victim has a reason to fear the Defendant. *See United States v. Carthen*, 681 F.3d 94, 101 (2d Cir. 2012) (upholding a finding of "good cause" for a domestic violence victim who made initial, credible statements and later refused to testify and recanted her statements).

The two statements on the DIR were made under different circumstances, so the Court will analyze each statement separately. The first statement qualifies as an "excited utterance." The Victim gave the statement immediately to responding officers at the scene. It occurred not long after the 9-1-1 call in which the Victim was clearly shaken. Further, it was made while the Victim was still bleeding from her head from the incident and before the Victim was transported to the hospital. Clearly the Victim was still under the stress of the incident. The Victim made the second statement at the hospital at some point later that day, so it is unclear whether she was still excited from the incident. The Court reserves judgment as to whether this statement qualifies as an "excited utterance" until it hears testimony as to the state of the Victim at the time of each statement.

Regardless, there is, however, "good cause" to admit the second statement. It has strong indicia of reliability because it is corroborated by the Defendant's own testimony that "she was going through my phone looking at shit, so that's what you get." ECF No. 37 at 2. While the Defendant has an interest in questioning the Victim regarding her "mistrust, anger, and bias" and alleged omissions, the Defendant's interest is outweighed by the Government's reason for failing to produce the witness and the reliability of the evidence. The Court reserves ruling on whether there is "good cause" to admit the first statement until it hears testimony regarding the Victim's state when the statement was made, which has a bearing on the statement's reliability.

For these reasons, the Fishkill DIR is admissible, providing the Government lays the proper foundation.

      3.    <u>Statement-1</u>

The Government seeks to admit a statement the Victim made at the scene to responding Fishkill Police Officer Nesbitt indicating that the Defendant had assaulted her in her head and stomach, threatened her, and ripped a TV off her wall and damaged it. This statement qualifies as

an "excited utterance" as it was made to the officer at the scene of the incident, shortly after the 9-1-1 call in which the Victim was excited, and while the Victim was still bleeding from her head.

There is also "good cause" to admit the statement. While the Defendant has an interest in confronting the Victim regarding her "mistrust, anger, and bias" towards the Defendant, as well as alleged omissions in her statements, this interest is outweighed by the reliability of the statement, which was made under excitement and close to the incident, and the Government's reason for failing to produce the witness.

For these reasons, "Statement-1" is admissible, provided the Government lays the proper foundation.

    4.    <u>Statement-2</u>

The Government seeks to admit a sworn and signed statement by the Victim the day following the Fishkill incident. The Government concedes this statement does not fall under an established hearsay exception and instead relies on "good cause" for admission. The Defense has a strong interest in questioning the Victim regarding this statement. It is a comprehensive accounting of the incident made after the fact. The Defendant has a strong interest in questioning he Victim regarding her "mistrust, anger, and bias" and alleged material omissions.

On the other hand, the statement is highly reliable because it is corroborated in part by the Victim's other admissible statements and the Defendant's own accounting of the incident. Further, while the statement was signed the next day and thus does not have indicia of reliability due to temporal proximity and excitement, it is a sworn and signed statement. Finally, the Government's reason for the witness's unavailability weighs in favor of admissibility. The

Victim is alleged to have suffered seizures after being attacked by the Defendant and is not testifying because she is afraid to re-experience those ailments.

For these reasons, "Statement-2" is admissible, provided the Government lays the proper foundation.

### 5. The Yonkers 9-1-1 Call

The Government seeks to admit a 9-1-1 call made by the Victim following the Yonkers Incident. The Court has reviewed the phone call. The Victim is excited and shaken to the point that the 9-1-1 operator can barely understand her at times. For the same reason as the Fishkill 9-1-1 call, the entire call is admissible as an "excited utterance," portions are admissible as "present sense impressions," and there is "good cause" to admit it.

For these reasons, the call is admissible, provided the Government lays the proper foundation.

### 6. Statement-3

The Government seeks to admit a statement the Victim made to responding Yonkers Police Officer DeRosa at the scene. The statement qualifies as an "excited utterance" because it was made at the scene, shortly after the Victim's distressed 9-1-1 call, and prior to transporting the Victim to the hospital. The Victim was still under the stress of the incident and her injuries.

The Government also argues there was "good cause" to admit the statement. If "Statement-3" were not admissible as an "excited utterance", there would likely not be "good cause" to admit it. The circumstances of an "excited utterance" provide a strong reassurance of reliability. Without that reassurance, the Government would fail to outweigh the Defendant's

very strong interest in questioning the Defendant regarding her presence at the Defendant's parents' home while having an order of protection against the Defendant.[3]

For these reasons, the statement is admissible, provided the Government lays the proper foundation.

       7.      <u>The Yonkers DIR</u>

The Government seeks to admit the Domestic Incident Report from the Yonkers Incident, which contains the Victim's first words to responding officers at the scene: "He hit me. I have an order against him." It also contains a statement the Defendant gave at the scene: "I was visiting Carlos Peguero's parents when he came into the apartment and got angry I was there. He began yelling at me and then started punching me in my chest and head. He then choked me with both his hands. I am in fear for my safety and wish to press charges. I have an order of protection against Carlos from Dutchess County."

The analysis for Statement-3 extends to the Yonkers DIR. The Victim's DIR statements are "excited utterances" and are admissible provided the Government lays the proper foundation.

## CONCLUSION

For the foregoing reasons, all of the Victim's statements are admissible assuming the Government lays the necessary foundation at the hearing. The Clerk of the Court is respectfully directed to terminate the pending motion (ECF No. 73).

Dated:  October 6, 2020                                  SO ORDERED:
           White Plains, New York

                                                                NELSON S. ROMÁN
                                                            United States District Judge

---

[3] This interest is especially strong because Violation #9 alleges the Defendant violated the order of protection.